## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. |
| | ) | |
| ROY TERRY | ) | |

## PLEA AGREEMENT

DEFENSE COUNSEL:              GEORGE L. BECK, JR.

ASSISTANT U.S. ATTORNEY:        MATTHEW S. MINER

## COUNT(S) AND STATUTES CHARGED:

Counts 1-6        <u>18 U.S.C. § 1344 – Bank Fraud</u>

Whoever knowingly executes, or attempts to execute, a scheme or artifice;
(1) to defraud a financial institution; or
(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Count 7        <u>18 U.S.C. § 664 – Misuse of Pension Funds</u>

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both. As used in this section, the term "any employee welfare benefit plan or employee pension benefit plan" means any employee benefit plan subject to any provision of title I of the Employee Retirement Income Security Act of 1974.

Counts 8-11          <u>18 U.S.C. § 1343 – Wire Fraud</u>

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Count 12          <u>18 U.S.C. § 1341 – Frauds and Swindles</u>

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

Count 13          <u>18 U.S.C. § 2314 – Transportation of Money Taken By Fraud</u>

Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud . . . Shall be fined under this title or imprisoned not more than ten years, or both.

2

## COUNT(S) PLEADING PURSUANT TO PLEA AGREEMENT:

Counts 1-6          18 U.S.C. § 1344 – Bank Fraud

Count 7             18 U.S.C. § 664 – Misuse of Pension Funds

Counts 8-11         18 U.S.C. § 1343 – Wire Fraud

Count 12            18 U.S.C. § 1341 – Frauds and Swindles

Count 13            18 U.S.C. § 2314 – Transportation of Money Taken By Fraud

## PENALTIES BY COUNT – MAXIMUM PENALTY:

Counts 1-6          18 U.S.C. § 1344 – Bank Fraud

A term of imprisonment which may not be more than 30 years, or a fine not to exceed $1,000,000, or both fine and imprisonment; and a term of supervised release of not more than 5 years; and an assessment fee of $100.00.

Count 7             18 U.S.C. § 664 – Misuse of Pension Funds

A term of imprisonment which may not be more than 5 years, or a fine not to exceed $250,000, or both fine and imprisonment; and a term of supervised release of not more than 3 years; and an assessment fee of $100.00.

Counts 8-11         18 U.S.C. § 1343 – Wire Fraud

A term of imprisonment which may not be more than 20 years, or a fine not to exceed $250,000, or both fine and imprisonment; and a term of supervised release of not more than 3 years; and an assessment fee of $100.00.

Count 12            18 U.S.C. § 1341 – Frauds and Swindles

A term of imprisonment which may not be more than 20 years, or a fine not to exceed $250,000, or both fine and imprisonment; and a term of supervised release of not more than 3 years; and an assessment fee of $100.00.

Count 13            18 U.S.C. § 2314 – Transportation of Money Taken By Fraud

A term of imprisonment which may not be more than 10 years, or a

fine not to exceed $250,000, or both fine and imprisonment; and a term of supervised release of not more than 3 years; and an assessment fee of $100.00.

## ELEMENTS OF THE OFFENSE(S) TO WHICH DEFENDANT IS PLEADING GUILTY:

### 18 U.S.C. § 1344 – Bank Fraud

First:      That the defendant executed or attempted to execute a scheme [to defraud a financial institution] [to obtain money, assets, or property from a financial institution by means of false or fraudulent pretenses, representations, or promises relating to a material fact], as charged;

Second:    That the defendant did so willfully with an intent to defraud;

Third:     That the false or fraudulent pretenses, representations, or promises were material; and

Fourth:    That the financial institution was federally [insured] [chartered].

### 18 U.S.C. § 664 – Misuse of Pension Funds

First:      That the defendant knowingly and intentionally [embezzled] [stole] or [abstracted or converted to his own use or the use of another] any moneys, funds, securities, premiums, credits, property, or other assets;

Second:    That he did so from an employee welfare benefit plan or employee pension benefit plan or of any fund connected therewith; and

Third:     That the employee benefit plan was subject to any provision of title I of the Employee Retirement Income Security Act of 1974.

<u>18 U.S.C. § 1343 – Wire Fraud</u>

<u>First</u>:      That the defendant knowingly devised or participated in a scheme

to defraud, or for obtaining money or property by means of false

pretenses, representations or promises;

<u>Second</u>:      That the false pretenses, representations or promises related to a

material fact;

<u>Third</u>:       That the defendant did so willfully and with an intent to defraud;

and

<u>Fourth</u>:      That the defendant transmitted or caused to be transmitted by wire

in interstate commerce some communication for the purposes of

executing the scheme to defraud.

<u>18 U.S.C. § 1341 – Frauds and Swindles</u>

<u>First</u>:      That the defendant knowingly devised or participated in a

scheme to defraud, or for obtaining money or property by

means of false or fraudulent pretenses, representations or

promises;

<u>Second</u>:      That the false or fraudulent pretenses,

representations or promises related to a material

fact;

<u>Third</u>:      That the defendant acted willfully with an intent to defraud;

and

<u>Fourth</u>:      That the defendant used [the United States Postal

Service by mailing or by causing to be mailed] [a

private or commercial interstate carrier by

depositing or causing to be deposited with such

carrier] some  matter or thing for the purpose of

executing the scheme to defraud.

18 U.S.C. § 2314 – Interstate Transportation of Stolen Property or Property Taken by

Fraud

First:        That the defendant [transported] [transmitted] [transferred] or

caused to be [transported] [transmitted] [transferred], in interstate

commerce, items of [stolen property] [converted property]

[property taken by fraud] as charged;

Second:     That such items had a value of $5,000 or more; and

Third:       That the defendant transported the items willfully and with

knowledge that the property had been [stolen] [converted] [taken

by fraud].

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Matthew S. Miner, Assistant United States Attorney, and George L. Beck, Jr., attorney for

the Defendant, pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, as Amended,

have, with the authorization of the undersigned defendant, heretofore entered into discussions with

a view towards reaching a pretrial conclusion of the charges pending in the Information herein, and

a Plea Agreement has been reached by said parties.  The plea is being submitted to the Court

pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

## GOVERNMENT'S PROVISIONS

1. Upon Defendant's full acceptance of responsibility, and entry of a plea of guilty to the offense charged in Counts 1 through 13 of the Information, the attorney for the Government will do the following:

    a.    The Government will agree that a 3-level reduction in the applicable offense level is appropriate pursuant to U.S.S.G. §§ 3E1.1(a)&(b) for defendant's acceptance of responsibility, so long as defendant does not obstruct justice or otherwise fail to accept responsibility for the offense conduct.

    b.    The Government will agree that the defendant's sentencing guideline level should be level 33, which is in Zone D. This calculation is based, in part, upon the appropriate reduction in defendant's guidelines range for acceptance of responsibility as delineated in paragraphs a and b, above. Additionally, this calculation is subject to defendant's reservation of the right to challenge the issues identified infra, at subparagraph 1(d). A sentence in Zone D is not eligible for probation.

    c.    The Government will agree that defendant should receive a sentence at the low-end of the applicable sentencing guidelines range. Thus, assuming an offense level of 33, this would result in a term of 135 months of imprisonment in this matter. This agreement to a specific term of months is subject to defendant's reservation of the right to challenge the issues identified infra, at subparagraph 1(d), through which defendant may argue for a lower applicable sentencing guideline range and corresponding low-end

term of imprisonment.

d.    The Government will agree that defendant may challenge at sentencing and on appeal the following two issues as they relate to the application of the U.S. Sentencing Guideliens Manual: (1) the application of the January 2003 Amendments to the U.S. Sentencing Guidelines Manual insofar as defendant chooses to claim that an earlier guideline book should apply; and (2) whether the "actual loss" amount the Court considers at sentencing should be adjusted to a figure below $20 million based on defendant's argument that the value of Terry Manufacturing Company and its assets were adversely affected because defendant was not allowed to implement his business plan for Terry Manufacturing Company into and through the Company's bankruptcy proceedings.  The Government agrees to defendant's reservation of these challenged issues at sentencing and on appeal, as long as defendant continues to:  (1) admit to his involvement in the crimes charged in the Information, including the dollar amount that was, in fact, lost by creditors and other victims; and (2) not otherwise obstruct justice or fail to accept responsibility.

e.    The Government will agree not to prosecute the person understood by both parties as "Jane Roe" for any alleged involvement in the charged offenses.

f.    The Government will agree that the defendant may voluntarily surrender after his sentencing in this matter, as long as the defendant does not violate the terms of his pretrial release, including violating any state, local, or federal criminal law or obstructing justice.

g.    The Government will agree for Sentencing Guidelines purposes that the "actual loss" in this case is more than $20 million but less than $50 million. This agreement is subject to defendant's reservation of the right to challenge the issues identified <u>supra</u>, at subparagraph 1(d).

h.    Should the defendant provide substantial assistance to authorities, as defined in the Cooperation Agreement herein, the Government will agree to a reduction in the applicable offense level under the provisions of the United States Sentencing Guidelines §5K1.1 and/or Rule 35, Federal Rules of Criminal Procedure for Substantial Assistance to Authorities, contingent upon the defendant's completed assistance to authorities. The government will move for such a reduction, as detailed in this paragraph and in paragraph 5 of this Agreement, when the defendant's assistance becomes complete. The government will have sole discretion in exercising its authority as to the timing and amount of the recommended departure.

i.    The Government will agree not to institute a criminal forfeiture action relating to the charges herein.

2. The United States reserves the right to inform the Court and the Probation Office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses and the defendant's background.

## DEFENDANT'S PROVISIONS

3.    The defendant agrees to the following:

a.    To accept full responsibility and plead guilty to Counts 1 through 13 of the

Information.

b.   That it is appropriate for him to be sentenced based upon a sentencing guideline level of 33 and to a term of 135 months of imprisonment, should the Court find that the January 2003 Amendments to the <u>U.S. Sentencing Guidelines Manual</u> apply to the facts of this case at sentencing and that defendant's business plan for Terry Manufacturing Company into and through bankruptcy would not have affected the "actual loss" amount the Court considers at sentencing so as to reduce the amount below $20 million. The defendant further agrees that he will make no motion for a downward departure or otherwise object to an offense level calculation that results in a sentence at the low end of the appropriate range within guideline level 33, if such findings are made by the Court.

c.   To agree that the "actual loss" for Sentencing Guidelines purposes is more than $20 million but less than $50 million, subject to defendant's argument that the value of Terry Manufacturing Company and its assets were adversely affected because defendant was not allowed to implement his business plan for Terry Manufacturing Company into and through the Company's bankruptcy proceedings. Should the Court find that the value of Terry Manufacturing Company and its assets were adversely affected because defendant was not allowed to implement his business plan for Terry Manufacturing Company into and through the bankruptcy, defendant reserves the right to argue that the "actual loss" figure for Sentencing Guidelines

purposes should be less than $20 million.

d.    To pay full restitution to any and all affected victims in the amount determined by the United States Probation Office.

e.    To waive his rights to appeal and collaterally attack his conviction and sentence as detailed and limited, <u>infra</u>, at paragraph 6.

f.    To provide substantial assistance to authorities, as defined <u>infra</u> at paragraph 5.

g.    To accept responsibility for the crimes charged in this case and to avoid committing any further criminal violations prior to sentencing.

## FACTUAL BASIS

4. The defendant admits the allegations charged in Counts 1 through 13 of the Information, including the allegations set forth in paragraphs 1 through 170. In sum, the defendant understands that the nature of the charges to which the plea is offered involves proof as to Counts 1 through 13, namely that:

(1) Defendant was the President and Chief Executive Office of Terry Manufacturing Company ("Terry Mfg."), headquartered in Roanoke, Alabama, within the Middle District of Alabama, at all times material to the Information. Terry Mfg. employed over 200 employees.

(2) In the applications and financial reports submitted to federally insured banks, including Southtrust Bank, First Bank of Roanoke, First Tuskegee Bank, the Bank of Wedowee, Small Town Bank of Wedowee, and at the times and in the manner described in the Information, defendant, while aided and abetted by another person, intentionally misrepresented the financial condition of Terry Mfg., including overstating the accounts receivable and inventory of Terry Mfg., to obtain loans and

comply with the financial reporting requirements for such loans during the terms of such loans. Misrepresentations were also made to the United States Department of Agriculture in connection with loans issued by Southtrust Bank and First Bank of Roanoke.

(3) Beginning in February 2001 and continuing until he lost control of Terry Mfg. in bankruptcy in July 2003, defendant knowingly and intentionally misused employee and employer contributions to the Terry Mfg. company pension plan. Specifically, defendant failed to deposit or arrange for the deposit of employee payroll withholdings and Terry Mfg. employer contributions pledged to the Terry Mfg. company pension plan. No deposits were made to the Terry Mfg. plan after February 28, 2001, despite the continued withholding of employee payroll amounts from over 200 employees and statements in Terry Mfg's 2001 and 2002 annual financial statements that "Terry Manufacturing has no unfunded pension costs[.]"

(4)    In September 2002, defendant made material misrepresentations regarding loan investments in interstate wire communications, specifically telephone calls and facsimiles, regarding both the financial condition and value of Terry Mfg. and the nature of the investment being offered, as specifically alleged in the Information, to investors including Stanford Stoddard, John Bernard, and O'Neil Swanson, each of whom was located outside of Alabama at the times of such interstate wire communications with the defendant, who was located in the Middle District of Alabama.

(5) In March 2003, defendant made material misrepresentations regarding a similar loan investment to Dr. Roosevelt McCorvey ("Dr. McCorvey") and investors affiliated with him. The material misrepresentations again were regarding both the financial condition and value of Terry Mfg. and the nature of the investment being offered, as specifically alleged in the Information. For the purpose of executing the above-described misrepresentations to obtain loan investments (totaling

approximately $1.25 million), the defendant knowingly and willfully caused correspondence and documents to be delivered and sent by a private and commercial delivery service to Dr. McCorvey in Montgomery, Alabama, within the Middle District of Alabama.

(6) From at least January 1, 2003, through February 18, 2003, the defendant engaged in a pattern of check kiting during which the defendant would deposit Terry Mfg. checks written on an account at the Bank of Wedowee into another Terry Mfg. account at First Bank of Roanoke, and then do the same process in reverse between the accounts to maintain the appearance of an inflated account balance. During this period, the defendant fraudulently obtained over $2 million in additional funds belonging to First Bank of Roanoke and the Bank of Wedowee for his own use at Terry Mfg. based on the over $8.5 million in checks written between the two accounts.

(7) Beginning in August 2001 and continuing into July 2003, the defendant made materially false representations in connection with proposed investments and loans via interstate wire communications, specifically telephone calls and facsimiles, regarding both the financial condition and value of Terry Mfg. and the nature of the investments being offered, as specifically alleged in the Information, to Anthony and Yvonne Robinson, both of whom were located outside of Alabama at the times of such interstate wire communications with the defendant, who was located in the Middle District of Alabama.

(8) Beginning in February 2001 and continuing to the date of the bankruptcy in this case, the defendant made materially false representations in connection with his requests for credit from his military camouflage fabric supplier, H.L.C. Industries, and that supplier's requests for credit insurance in connection with the extension of credit, which resulted in an extension of approximately $1.9 million in credit. Defendant made these materially false representations via interstate wire

communications, specifically telephone calls and facsimiles, regarding the financial condition of Terry Mfg., as specifically alleged in the Information, to H.L.C. Industries, which was located outside of Alabama. At the times of the interstate wire communications, the defendant was located in the Middle District of Alabama.

(9) In November 2000, the defendant, while aided and abetted by another person, made materially false representations to N. Dudley Horton ("Horton") and American Real Estate Investment Company ("A.R.E.") regarding the financial condition of Terry Mfg. and regarding the nature and use of a proposed investment which was purportedly to fund a new business division of Terry Mfg. called Terry Promotional Products. Based upon these misrepresentations, Horton, through his company A.R.E., provided approximately $5.5 million to capitalize Terry Promotional Products, which was never capitalized, is not a formal business entity, has no tax records, and appears in name only in Terry Mfg. documents. The proceeds from the $5.5 million investment were consistently used to satisfy loan payments, general operating expenses, and other outstanding obligations of Terry Mfg.

(10) In total, defendant's fraudulent activities listed above resulted in a loss of over $20 million, but less than $50 million, to the various banks, investors, lenders, and employee benefit plan participants listed above. Notwithstanding the foregoing, the parties agree that defendant may argue at sentencing and on appeal that a lower "actual loss" amount should be considered by the Court based upon defendant's argument that the value of Terry Manufacturing Company and its assets were adversely affected because defendant was not allowed to implement his business plan for Terry Manufacturing Company into and through the Company's bankruptcy proceedings.

(11) The misrepresentations identified above, and more specifically alleged in the

Information, were material to the investments, loans, and transactions identified above, in that they were made to facilitate such investments, loans, and transactions, and such investments, loans, and transactions would not have been made in light of accurate information.

(12) The parties stipulate and agree that the Terry Mfg. company pension plan was a benefit plan subject to title I of the Employee Retirement Income Security Act of 1974.

All of the above events occurred within the Middle District of Alabama. Defendant acknowledges and agrees that his conduct, as detailed above, violated Title 18, United States Code, Sections 1344, 664, 1343, 1341, and 2314.

## COOPERATION AGREEMENT

5. Defendant agrees to cooperate fully and testify truthfully against any and all persons as to whom the defendant may have knowledge at the grand jury, trial, or whenever called upon to do so, including but not limited to any of defendant's co-defendants who may proceed to trial. The defendant understands that this agreement does not require the defendant to implicate any other particular individual or individuals or to "make a case," rather it requires the defendant to be truthful and to testify truthfully whenever called upon. In particular, defendant agrees to:

a.    Cooperate fully and testify truthfully against any and all persons as to whom he may have knowledge at grand jury, trial (criminal or civil), or whenever called upon to do so;

b.    Make himself available for the review of documents and other materials and for interviews by law enforcement officers and attorneys for the United States, or their designees, and to respond fully and truthfully to all questions asked of him by such persons;

c.    Disclose fully and truthfully to law enforcement officers and attorneys for the United States any and all knowledge and information he has, including any documents or materials

in his possession or of which he has knowledge, about any and all criminal activity in the Middle District of Alabama and elsewhere; and

      d.      Submit, upon request, to polygraph examinations conducted by the United States.

5-1.    The United States shall consider the defendant's substantial assistance to the trustee in the ongoing bankruptcy and related litigation, as well as the creditors of Terry Mfg. and Terry Uniform and the victims of the crimes herein, in the recovery of monies lost during the operation and/or collapse of Terry Mfg., as part of this cooperation agreement. The United States has the sole discretion to evaluate the nature, degree, and truthfulness of the defendant's substantial assistance in this regard, including the timing and extent of any recommended downward departure based on such substantial assistance, if any.

5-2.    Provided that Defendant satisfies the terms of this Plea Agreement, any information that he truthfully discloses to the United States during the course of his cooperation, concerning related offenses, will not be used against him, directly or indirectly. Defendant understands, however, that this Plea Agreement does not bar his prosecution for capital felonies, perjury, false statements, and obstruction of justice.

5-3.    Upon Defendant's complete fulfillment of his obligations and covenants under this Plea Agreement, including, but not limited to the Cooperation Agreement contained herein, the United States may recommend a downward departure pursuant to U.S.S.G. § 5K1.1 and/or Federal Rule of Criminal Procedure 35. The United States has the sole discretion to decide the timing and extent of the recommended downward departure.

5-4.    If Defendant has failed or should fail in any way to fulfill completely his obligations

under this Plea Agreement, including his obligations and covenants under the Cooperation Agreement contained herein, then the United States will be released from its commitment to honor all of its obligations to him set forth in this Plea Agreement. Thus, if at any time, including, but not limited to, prior to or during his testimony before grand juries, hearings or in trials, Defendant should knowingly and willfully withhold evidence from, or provide false, or fail to disclose full and truthful, information to, the United States, its investigators, or attorneys then the United States will be free (1) to prosecute him for perjury, false declaration, false statement, and/or obstruction of justice (18 U.S.C. Sections 1621, 1623, 1001, 1503); (2) to prosecute him for all violations of federal criminal law which he has committed; (3) to use against him in all of those prosecutions and sentencings the documents, materials, statements, and information that he has himself disclosed or furnished to the United States during the course of his cooperation; (4) to recommend a maximum sentence; and (5) to seek forfeiture of any and all forfeitable properties of Defendant.

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

6. Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence. Defendant further expressly waives the right to appeal the conviction and sentence on any other ground and waives the right to attack the sentence in any post-conviction proceeding. This waiver does not include the right to appeal on the ground of ineffective assistance of counsel or prosecutorial misconduct. Nor does the waiver include any such other ground as may not permissibly be waived under the law. This waiver also does not limit the ability of either party to appeal the district court's decisions at sentencing regarding the two issues specifically reserved for argument by defendant, supra at subparagraph 1(d), namely: (1) the

17

application of the January 2003 Amendments to the <u>U.S. Sentencing Guidelines Manual</u> insofar as defendant chooses to claim that an earlier guideline book should apply; and (2) whether the "actual loss" amount the Court considers at sentencing should be adjusted to a figure below $20 million based on defendant's argument that the value of Terry Manufacturing Company and its assets were adversely affected because defendant was not allowed to implement his business plan for Terry Manufacturing Company into and through the Company's bankruptcy proceedings.

Notwithstanding the above, the defendant reserves the right to file a direct appeal for any upward departure from the applicable Guidelines range which the sentencing court specifies at the time of sentencing as having been imposed pursuant to either U.S.S.G. § 4A1.3 (from criminal history category) or § 5K2.0 (from offense level). The defendant understands and agrees that this waiver as to all other Guidelines findings would still be in force and effect notwithstanding the appealability of an upward departure.

In return for the above waiver by the defendant, the Government does not waive its right to appeal the sentence imposed in the instant case. The Government does not waive its right to appeal any order dismissing the Indictment, vacating a sentence, or otherwise terminating the prosecution at any stage of the proceedings. Further, the parties agree that nothing in this agreement shall affect the Government's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if the United States appeals the defendant's sentence pursuant to 18 U.S.C. § 3742(b), the defendant is released from this waiver.

## DEFENDANT'S UNDERSTANDING AND ACKNOWLEDGMENT

7. The defendant, before entering a plea of guilty to Count 1 of the Information as provided for herein by said Plea Agreement, advises the Court that:

18

a. The discussions between the attorney for the Government and the attorney for the defendant towards reaching an agreed plea in this case have taken place with the defendant's authorization and consent.

b. The defendant further understands that, pursuant to 18 U.S.C. § 3013, a $100.00 assessment fee is to be paid by Defendant on the date of sentencing as to each felony Count, and that, if a fine is imposed by the Court at sentencing, the defendant shall meet with a member of the Financial Litigation Section of the United States Attorney's Office on the day of sentencing and complete a written personal financial statement setting forth the defendant's assets and liabilities as of the date of the offense. The defendant will make an honest, good faith effort to pay said fine as directed by the Financial Litigation Section of the United States Attorney's Office. The defendant further understands that by completing the financial statement, the defendant is representing that it is true and accurate to the best of the defendant's information, knowledge, and belief.

c. The defendant understands that the defendant has a right to be represented by an attorney at every stage of the proceedings against the defendant herein and is represented by the defendant's undersigned attorney.

d. The defendant understands that the defendant has the right to plead not guilty and has the right to be tried by a jury and, at a trial thereof, has the right to the assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right to call witnesses in the defendant's own behalf, and the right not to be compelled to incriminate the defendant, and that if the defendant enters a plea of guilty herein, there will not be a further trial of any kind and that by the entry of such a plea, the defendant waives the right to a trial by jury or to a trial before the Court.

e. The defendant further understands that in entering a plea of guilty herein, the Court

19

may ask questions about the offense to which the plea is entered and further understands that if the defendant answers these questions under oath, on the record, and in the presence of counsel, which questions and answers would be recorded, that the answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

f. The defendant further understands and advises the Court that the Plea Agreement as set forth herein and the plea to be entered by the defendant as a result thereof is voluntary on the defendant's part and is not the result of any force or threats or of any promises apart from the aforesaid Plea Agreement. The defendant further advises the Court that the Plea Agreement set forth herein is the result of prior discussions between the attorney for the Government and the attorney for the defendant, all conducted with the defendant's authorization, knowledge, and consent.

g. The defendant further advises the Court that the defendant's understanding of this Plea Agreement is as set forth in this document.

h. The defendant further understands that the Government can only make a recommendation which is not binding upon the Court.

i. The defendant further advises the Court that the defendant understands and has been advised that evidence of a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Indictment herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceedings against the defendant. However, the defendant does understand that evidence of a statement made in connection with and relevant to a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Indictment herein, is admissible in a criminal proceeding for perjury or false statement when the statement was made by the defendant under oath, on the court record, and in the presence of

counsel.

j. The defendant is satisfied that defense counsel has been competent and effective in representing defendant.

8. The undersigned attorneys for the Government and defendant represent to the Court that the foregoing Plea Agreement is the agreement of the parties that has been reached pursuant to the Plea Agreement procedure provided for in Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, as Amended. The attorney for defendant further advises the Court that defendant has been advised of the nature of the charge to which the foregoing described plea is to be offered, and that defendant has been advised of defendant's right to plead not guilty and to be tried by a jury on all issues herein; of the maximum possible penalty provided by law; that by the entering of a plea of guilty as aforesaid, the defendant waives the right to be tried by a jury or by the Court, waives the right to confront and cross-examine witnesses against defendant and the right not to be compelled to incriminate defendant; and that if defendant pleads guilty, there will not be a further trial of any kind. Further, defendant has been advised that if the defendant pleads guilty, the Court may ask questions about the offense to which the defendant has pleaded and that if the plea is rejected or later withdrawn, that the answers to such questions may not be used against defendant in a civil or criminal proceeding, but that defendant's answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

9.   Defendant understands that the U.S. Probation Office will prepare a presentence investigation report for the Court.  The Probation Officer will consider defendant's conduct related to the offense to which the plea is offered, as well as defendant's criminal history.  The offense level or criminal history category, as calculated by the Probation Officer and determined by the court, may differ from that projected by defendant's counsel or the U.S. Attorney.

This _20ᵗʰ_ day of June, 2005.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

Matthew S. Miner
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101
(334)223-7280

Louis V. Franklin, Sr.
Chief, Criminal Division

22

I have read the foregoing Plea Agreement, understand the same, and the matters and facts set forth therein accurately and correctly state the representations that have been made to me and accurately set forth the conditions of the Plea Agreement that has been reached.

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE AND CORRECT AND THAT I AM SATISFIED THAT I HAVE RECEIVED COMPETENT ADVICE AND REPRESENTATION FROM MY DEFENSE COUNSEL.

Roy Terry
Defendant

6-21-05
Date

George L. Beck, Jr.
Attorney for the Defendant

6-21-05
Date